UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ERIC RUSNOCK, ANDREW NYE, and ROSE NYE, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiffs, | : Case No.: : |
| v. | : CLASS ACTION COMPLAINT : |
| THE SHERWIN-WILLIAMS COMPANY, and THE SHERWIN-WILLIAMS MANUFACTURING COMPANY, | : : JURY TRIAL DEMANDED : |
| Defendants. | : : |

## CLASS ACTION COMPLAINT

Plaintiffs Eric Rusnock, Andrew Nye, and Rose Nye (collectively, "Plaintiffs"), individually and on behalf of all other similarly situated persons and entities, upon personal knowledge of facts pertaining to them and information and belief as to all other matters, by and through undersigned counsel, hereby file this Class Action Complaint against The Sherwin-Williams Company and The Sherwin-Williams Manufacturing Company (collectively, "Defendants") and alleges as follows:

## PARTIES

1.     Plaintiff Eric Rusnock is a citizen and resident of the Commonwealth of Pennsylvania and owns a home in which SuperDeck IR Reflective Exterior Waterborne Semi-Solid Color Stain in the chestnut color was applied to his wooden deck.

2.     Plaintiffs Andrew and Rose Nye (collectively, "the Nye's" or "the Nye Plaintiffs") are citizens and residents of the Commonwealth of Pennsylvania and own a home in which

1

SuperDeck IR Reflective Exterior Waterborne Semi-Solid Color Stain in the chestnut color was applied to their wooden deck.

3.    Defendant The Sherwin-Williams Company is an Ohio Corporation with a principle place of business in Cleveland, Ohio. The Sherwin-Williams Company, in coordination with its subsidiaries, designs, manufactures, markets, and sells paints, primers, stains, finishes, coatings, sealants, and other related products, including the Duckback and SuperDeck lines of products. The Sherwin-Williams Company causes these products to be sold in this District, in Pennsylvania, and throughout the United States. At all times relevant here, The Sherwin-Williams Company was, and is, the parent corporation of The Sherwin-Williams Manufacturing Company.

4.    Defendant The Sherwin-Williams Manufacturing Company is a subsidiary of Defendant The Sherwin-Williams Company. The Sherwin-Williams Company is an Ohio Corporation with a principle place of business in Cleveland, Ohio. The Sherwin-Williams Manufacturing Company, in coordination with The Sherwin-Williams Company, designs and manufactures paints, primers, stains, finishes, coatings, sealants, and other related products, including the Duckback and SuperDeck lines of products.

## JURISDICTION AND VENUE

5.    The Court has subject-matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, the matter is a class action brought under Fed. R. Civ. P. 23, and at least one proposed Class member is of diverse citizenship from Defendants.

6.    The Court has personal jurisdiction over Defendants because their principle place of business is in this District, they conduct substantial, continuous, and systematic business in this

2

District, they have purposefully placed their products in the stream of commerce in this District, and they have purposefully availed themselves of the laws of this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all Defendants are corporations subject to the Court's personal jurisdiction and therefore reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

8.      Exterior wood and concrete surfaces that are exposed to the elements must be protected in order to prevent damage from rot, cracking, splintering, mold, fungus, mildew. Decking is particularly susceptible to damage because it also must incur foot traffic.

9.      Consumers purchase protective coatings and stains such as Duckback and SuperDeck sealers, stains, and coatings ("Products") in order to preserve and protect their outdoor wooden and concrete surfaces from weather and ultraviolet rays, thereby prolonging the life of the surface. Consumers are willing to pay a premium price for the most effective stains and coatings due to the comparably high cost of replacing a wooden or concrete surface.

10.      Defendants design, manufacture, market, and sell paints, primers, stains, finishes, coatings, sealants, and other related products.

11.      In 2013, Defendants acquired the United States and Canada businesses of Consorcio Comex, S.A. de C.V. ("Comex"), including Comex's Duckback and SuperDeck brands.[1] Defendants continue to design, manufacture, market, and sell Duckback and SuperDeck products.

---

[1] The Sherwin-Williams Company, *Form 10-Q*, SEC (Sept. 30, 2013), https://www.sec.gov/Archives/edgar/data/89800/000008980013000094/shw-2013930x10q.htm.

12.     Duckback is marketed as a brand of "premium, high quality coatings that protect outdoor living spaces from the harsh conditions of ultraviolet rays" and rain.[2]

13.     SuperDeck is a line of sealers, stains, and coatings for wooden and concrete decks under the Duckback brand.[3]

14.     Defendants market, sell, and warrant the SuperDeck line of products. SuperDeck products marketed under either the Duckback or Sherwin-Williams brand are identical.

15.     Defendants market, sell, and warrant SuperDeck as "premium products," "[f]eaturing Premium Duckback Technology," "perfect for every stage of the job. From surface prep to cleaner, the SuperDeck finishing system ensures long-lasting performance, easy clean up and a beautiful finish."[4]

16.     All SuperDeck products prominently display on their Sherwin-Williams website descriptions and labels, "FEATURING PREMIUM DUCKBACK TECHNOLOGY."

17.     Defendants market, sell, and warrant a variety of Products for various applications, with the following descriptions on the Sherwin-Williams website:

a.      SuperDeck Exterior Waterborne Clear Sealer: "SuperDeck® Exterior Waterborne Clear Sealer protects wood from sun and moisture while allowing the wood to gray naturally. Water repellants protect wood against cracking, splitting and warping."

b.      SuperDeck Exterior Oil-Based Transparent Stain: "A penetrating, oil-based formula that enriches and protects the beauty of wood with a rich transparent stain."

c.      SuperDeck Exterior Oil-Based Semi-Transparent Stain: "A penetrating oil-based formula that protects the beauty of the wood with a rich semi-transparent stain that allows wood grain texture to show through. SuperDeck® Premium Oil-Based Semi-Transparent Stain repels water to

---

[2] *About*, Duckback, https://www.superdeck.com/about/ (last visited Mar. 28, 2019).
[3] *Superdeck*, Duckback, https://www.superdeck.com/product-category/superdeck/ (last visited Mar. 28, 2019).
[4] *SuperDeck® Deck Care System*, Sherwin-Williams, https://www.sherwin-williams.com/homeowners/products/families/superdeck-deck-care-system (last visited Mar. 28, 2019).

prevent moisture and contains a scuff resistant formula with UV protection that resists fading."

d.  SuperDeck Exterior Waterborne Semi-Solid Color Stain: "Protect and beautify your deck with this semi-solid stain for exterior horizontal wood surfaces. Since it can be applied to damp wood, most projects using SuperDeck® can be finished in a single day allowing homeowners to enjoy their exterior space sooner."

e.  SuperDeck IR Reflective Exterior Waterborne Semi-Solid Color Stain: "SuperDeck® IR reflective technology contains pigments that actually reflect solar rays back into the atmosphere, thereby helping reduce the exterior surface temperatures of decks exposed to the constant assault of direct sunlight."

f.  SuperDeck Log Home & Deck Stain: "With a rich, satin sheen, Log Home & Deck Stain is sure to make an elegant first impression."

g.  SuperDeck Exterior Waterborne Solid Color Deck Stain: "Provides durable, opaque protection for many exterior horizontal wood surfaces. It is recommended that you consult the manufacturer of your composite deck for staining procedures. Featuring Cool Feel™ Color Technology helps reduce the surface temperature by up to 20°F when compared to conventional color technology."

h.  SuperDeck IR Reflective Exterior Waterborne Solid Color Stain: "SuperDeck® IR reflective technology contains pigments that actually reflect solar rays back into the atmosphere, thereby helping reduce the exterior surface temperatures of decks exposedto the constant assault of direct sunlight."

i.  SuperDeck Exterior Deck & Dock Coating: "A high build coating designed to protect, resurface and repel water on old damaged wood and concrete. Helps bridge dimensionally unstable cracks on old damaged sound wood surfaces. Helps to smooth rough wood and concrete surfaces. Easy to use, just clean deck or patio surface and apply with a roller."

18.  Defendants make the following claims on the Duckback/SuperDeck website[5]:

a.  Deck & Dock Elastomeric Coating

    i.  "High-build elastomeric coating designed to protect, resurface and waterproof old, damaged wood and concrete. The unique formula provides long-lasting protection against moisture and the damaging effects of the sun. It is designed to expand and contract along with the substrate while offering excellent scuff resistance for heavy duty foot

---

[5] *SuperDeck*, Duckback, https://www.superdeck.com/product-category/superdeck/ (last visited Mar. 28, 2019).

traffic areas. Deck & Dock will lock down splinters and bridge dimensionally unstable cracks on old damaged wood surfaces."

    ii. Features: "Can be used on new wood, old wood, or concrete"; "Use over existing exterior paint or stained surfaces"; "Offers Excellent scuff resistance for heavy foot traffic areas."

    iii. Performance: "Formulated to resist growth of mildew and algae on the coating's surface"; "Add Duckback Anti-Skid Additive for a slip-resistant surface"; "Lifetime limited Warranty."

b.    Deck & Dock with Cool Feel™ Technology

    i. "High-build flexible coating designed to protect, resurface, and waterproof old, damaged wood and concrete. The unique formula provides long-lasting protection against moisture and the damaging effects of the sun. It is designed to expand and contract along with the substrate while offering excellent scuff resistance for heavy duty foot traffic areas. Deck & Dock with Cool Feel™ Technology helps reduce surface temperature by 20° F when compared to conventional technology."

    ii. Features: "High build flexible coating"; "Can be used on new wood, old wood, or concrete"; "Use over existing exterior paint or stained surfaces"; "Available in 3 packaged colors."

    iii. Performance: "Helps reduce surface temperature by 20° when compared to conventional technology"; "Formulated to resist growth of mildew and algae on the coating's surface"; "Add Duckback Anti-Skid Additive for a slip-resistant surface"; "Lifetime Limited Warranty."

c.    Semi-Solid Stain with Cool Feel™ Technology

    i. "Cool Feel™ Semi-Solid Stain delivers a coating that helps reduce surface temperature making it cooler to walk on. Formulated to include pigments that reflect solar rays back into the atmosphere, this advanced technology helps reduce the exterior surface temperature of decks exposed to the constant assault of direct sunlight."

    ii. Features: "Can be applied to damp wood, so most projects Can be finished in a single day"; "Cool Feel semi-Solid Stain Available in six package colors"; "Easy Soap-and-water cleanup."

    iii. Performance: "Cool Feel™ Technology Helps reduce surface temperature through IR technologies"; "contains agents that inhibit the growth of mildew on the surface of the coating."

d.    Semi-Transparent Stain Oil-Based

6

    i.  "A high-solid wood finish developed to give superior protection and beautiful color to exterior wood. Superdeck® Semi-Transparent Stain uses the highest quality ingredients to provide superior protection. This unique formula contains carnauba wax for an extremely durable finish and a beautiful lustrous sheen with mar and scuff resistance. Superdeck® Semi-Transparent Stain will not track and is resistant to foot traffic patterning. Superdeck® Semi-Transparent Stain is expertly formulated for any exterior surface including decks, fences, siding, and furniture. Available in a spectacular 63-color palette to capture the beauty you seek."

    ii.  Features: "Highest quality iron oxide pigments to create long-lasting colors and inhibit UV damage caused by the sun"; "contains tung oil for maximum durability"; "One coat coverage in a semi-transparent finish with increased hide, shows a subtle wood grain"; "Recommended for all exterior wood including pressure-treated wood."

    iii.  Performance: "Fortified with carnauba wax for mar and scuff resistance and Excellent water repellency"; "Formulated to resist growth of mildew and algae on the coating's surface."

e.    Semi-Transparent Waterborne Stain

    i.  "This waterborne Semi-Transparent Stain is formulated for 3 year durability. This unique formula penetrates deeply offering excellent UV protection and lasting defense against premature weathering and mildew."

    ii.  Features: "Can be applied to damp wood so most jobs Can be finished in One day"; "Soap & water Clean-up"; "Low VOC formula."

    iii.  Performance: "Technologically advanced formula for improved weathering"; "Lasting protection against cracking, peeling, and weathering"; "3 year limited warranty against cracking and peeling."

f.    Solid Color Stain

    i.  "An acrylic latex solid color coating that is fortified with a super-bonding alkyd resin that provides priming and penetration, plus outstanding adhesion to chalky surfaces. The combination of a topcoat and primer is perfect for new projects and as a solution for recoating old applications."

    ii.  Features: "Combines the major benefits of oil and water into one unique formula with easy soap-and-water clean-up"; "Excellent hide and completely opaque coverage"; "Available in three bases tintable to 85 colors."

      iii. Performance: "Built to resist mars and scuffs"; "Formulated to resist growth of mildew and algae on the coating's surface"; "Tannin blocking capability with outstanding color retention."

    g. Solid Color Stain with Cool Feel™ Technology

      i. "Solid Stain with Cool Feel™ Technology delivers a coating that helps reduce surface temperature making it cooler to walk on. Formulated to include pigments that reflect solar rays back into the atmosphere, this advanced technology helps reduce the exterior surface temperature of decks exposed to the constant assault of direct sunlight."

      ii. Features: "Can be applied to damp wood, so most projects Can be finished in a single day"; "Cool Feel Solid Stain Available in six package colors"; "Easy Soap-and-water cleanup."

      iii. Performance: "Cool Feel™ Technology Helps reduce surface temperature through IR technologies"; "contains agents that inhibit the growth of mildew on the surface of the coating."

    h. Transparent Stain

      i. "A penetrating, oil-based formula that enriches and protects the beauty of wood with a rich transparent stain."

      ii. "Whether used for a deck, fence, siding, or furniture, wood adds character and increases the value of your outdoor living space. The beauty and value is enhanced with Superdeck Transparent Stain. Adding a warm glow and showing 100% grain clarity, Transparent Stain emphasizes wood's uniquely natural beauty and strength. Superdeck Transparent Stain is formulated for use on any exterior wood surface including decks, fences, siding, outdoor furniture, shingle shakes, hot tub skirting, and more."

      iii. Features: "Highest quality iron oxide pigments to create long-lasting colors and inhibit UV damage caused by the sun"; "Three oil formula contains deep penetrating tung oil for long lasting protection"; "One coat coverage with a transparent finish that highlights the wood grain."

      iv. Performance: "Formulated to resist growth of mildew and algae on the coatings surface"; "Excellent water repellency"; "Recommended for all exterior wood including pressure treated wood."

    19. Defendants made similar claims as their websites on Duckback product labels, including:

      a.      Deck & Dock Solid Coating: "For new to extremely damaged wood & concrete"; "Surface restoration"

      b.      Semi-Transparent Waterborne Stain: "Technologically advanced formula for improved weathering"; "Lasting protection against cracking, peeling, and weathering"

      c.      Solid and Semi Solid: "Reflects solar rays back into the atmosphere"

20.     Defendants made claims about the quality of SuperDeck products in promotional videos, including:

      a.      "We are committed to providing you with the highest quality of deck-care products."[6]

      b.      "The deeper penetration of SuperDeck oil-based stains will give your customers confidence that the rich appearance of their freshly stained deck or siding will last for years."[7]

      c.      "You'll have the confidence of knowing you've got an outstanding product for every exterior wood restoration project."[8]

      d.      SuperDeck Deck & Dock allows customers to "restore" "damaged" surfaces instead of "replacing the substrate."[9]

      e.      Restoring surfaces with SuperDeck Deck & Dock makes them "usable for years to come," will add "years of life," and provides a "long-lasting finish."[10]

      f.      SuperDeck Deck & Dock is "perfect for extreme climates," and "the coating will not crack or peel."[11]

      g.      "SuperDeck wood stains are the choice of professionals for the complete protection of wood decks, fences, and siding."[12]

      h.      SuperDeck "stands up to all mother nature throws at it."[13]

---

[6] Sherwin-Williams, *SuperDeck® Deck Stains & Deck Care Products - Sherwin-Williams*, YouTube (Apr. 1, 2015), https://www.youtube.com/watch?v=qB9C9u3TbxQ.
[7] *Id.*
[8] *Id.*
[9] Duckback Makers of Superdeck and Mason's Select, *How To Stain A Deck Using Superdeck Deck & Dock Elastomeric Coating*, YouTube (Sept. 18, 2012), https://www.youtube.com/watch?v=sDbqwY8C_EA.
[10] *Id.*
[11] *Id.*
[12] Duckback Makers of Superdeck and Mason's Select, *How To Refinish a Wood Deck - Superdeck Deck Refinish Video*, YouTube (June 5, 2014), https://www.youtube.com/watch?v=obYGjKRLyOI.
[13] *Id.*

      i.     SuperDeck provides "superior protection against weathering."

21.    Defendants published press releases emphasizing the quality, longevity, appearance, durability, performance, innovation, and superiority of SuperDeck.[14] Karl Schmitt, senior vice president of market research, color and design at Sherwin-Williams, has publicly stated:

    a.    "Long-lasting results, durability and adhesion make the [SuperDeck] line perfect for any deck-related project."[15]

    b.    "SuperDeck is the most complete line in the industry for finishing both wood and composite decks, offering homeowners easy application, fast drying time and incredible durability."[16]

    c.    "Whether they are used for staining a new deck or restoring an old one, these products allow homeowners to complete projects faster with results that last longer without sacrificing quality or beauty."[17]

22.    Defendants' press releases also touted enhancements in some of the products[18]:

    a.    Enhanced SuperDeck Waterborne Semi-Transparent Stain: "The enhanced, technologically advanced formula will deliver this premium performance for up to three years while also offering improved weathering, similar to an oil-based stain that wears away, rather than peeling and blistering at the end of its life cycle."

    b.    Enhanced SuperDeck Waterborne Solid Color Stain: "Providing durable, opaque protection for exterior horizontal wood surfaces, this stain has also been enhanced for improved durability, offering even longer lasting protection against cracking, peeling and weathering."

    c.    SuperDeck Deck & Dock Elastomeric Coating: "An enhanced version of the SuperDeck Deck & Dock Elastomeric Coating will also be available later in the spring. Ideal for smoothing and filling rough or damaged

---

[14] Press Release, Sherwin-Williams Announces Enhancements to Superdeck® Products, Sherwin-Williams (Jan. 19, 2016), https://press.sherwin-williams.com/press/trade/releases/2016/superdeck-enhancements/.
[15] Press Release, Sherwin-Williams To Launch Most Comprehensive Deck Care System This Spring, Sherwin-Williams (Mar. 6, 2015), https://press.sherwin-williams.com/press/trade/releases/2015/superdeck-finishing-system/.
[16] Press Release, Sherwin-Williams to Launch Most Comprehensive Deck Care System for Homeowners, Sherwin-Williams (Apr. 9, 2015), https://press.sherwin-williams.com/press/consumer/releases/2015/deck-care-system/.
[17] Id.
[18] Press Release, Sherwin-Williams Announces Enhancements to Superdeck® Products, Sherwin-Williams (Jan. 19, 2016), https://press.sherwin-williams.com/press/trade/releases/2016/superdeck-enhancements/.

surfaces, this coating will adhere to weathered wood and concrete. The enhanced version can fill up to 1/8-inch wide cracks."

23.     Defendants' claims concerning the Products are all intended to induce customers into believing that Products are premium, high-quality, long-lasting, reliable, and durable, superior to other coatings and stains, that will better protect customers' wooden and concrete decks for years, thereby justifying the Products' premium prices. Defendants intended that customers would rely on Defendants' claims and purchase the Products.

24.     Customers, including Plaintiffs and the proposed Class, who are willing to pay a premium price for a superior protective coating product for their wood or concrete decks reasonably relied on Defendants' claims concerning the Products when researching, purchasing, and using the Products.

25.     The Products do not perform as advertised, and Defendants' claims concerning Products' quality, longevity, and durability are false, deceptive, and misleading.

26.     Customers, including Plaintiffs and the proposed Class, who have purchased or used the Products have found that the Products do not live up to Defendants' claims concerning quality, longevity, and durability.

27.     Numerous customers have written negative reviews of the Products, expounding on the Products' poor quality, longevity, durability, and lack of promised performance:

    a.     "A professional contractor pressure-washed my deck and applied this expensive product (color gray) purchased from a local building supply store, to my seaside deck that was old with peeling stain but not obviously rotting. The new coating lasted for two years but is now peeling away in large pieces (fun to remove but with obvious downsides). It seems to have held moisture in the wood and we now have many rotting boards that need to be replaced. I definitely do not recommend this product."[19]

---

[19] https://www.amazon.com/gp/customer-reviews/R2L63X528RZ4BL/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B00828ITF0

11

b.      "peeled after two weeks, all it took was a grass sprinkler turned on the surface of the deck for nine hours. When I called Duckback customer service they insisted I applied the stain wrong. I followed application instructions both online and on the back of the can. Do not, I repeat buy this product, you'll regret it. TOTAL GARBAGE!!!!!!!"[20]

c.      "The worst stain ever. I applied 2 coats according to the directions in September. I used on both horizontal (deck) and vertical (railings) surfaces. By the following spring it was badly weathered. Now, after almost 2 years it is an embarrassment. All of it needs to be sanded down to bare wood-again-and a high quality stain applied. A company rep inspected it, claimed it had not been applied according to directions (he couldn't know since he wasn't here) and would make no adjustment. The company does not stand behind their product. WARNING: do not buy this product. Some medium quality oil-based stain was applied to a small portion of railing at the same time as the Superdeck and after two years the wood treated with oil-based stain looks like the stain was applied last week. I am very disappointed because I had high hopes for this product. I do not blame Amazon since Amazon does not do product testing but this product is so bad that Amazon should stop making it available."[21]

d.      "Used Superdeck transparent stain on large deck and dock. I followed the instructions and applied two coats. After less than one year it looked terrible and had to be sanded down to bare wood and stained again. The company rep admitted it looked bad but no adjustment. I will never use a Superdeck product again."[22]

e.      "I have three large decks and applied this stain on all of them. Some I did myself, some professionally. Same results - peeling off in several areas after only one year. The store personnel told me this was normal and I would need to re-stain each year. I'm ready to rip the decks off of the house."[23]

f.      "Looked great on our cedar deck for the first two months. Bright, beautiful color and no issues with tackiness. Unfortunately, it didn't last long as it became a magnet for dirt. I've had to wash it with cleaner every few months and it still doesn't look great. Some of the stain started coming off after only a few months. I know what they'll say, I didn't prepare it correctly but I followed the directions diligently. I would try other stains for your deck."[24]

---

[20] https://www.amazon.com/gp/customer-reviews/R1QVXS9NUGN4IH/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B00828ITF0
[21] https://www.amazon.com/gp/customer-reviews/R36KCCK5NBTWNF/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B000RMRVQM
[22] https://www.amazon.com/gp/customer-reviews/RP6FTTPGSVWS2/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B000RUN6P4
[23] https://www.sherwin-williams.com/homeowners/products/superdeck-exterior-oilbased-semitransparent-stain#ratings-and-reviews
[24] *Id.*

g.    "Applied this stain last summer, pressure washed entire deck over 1000 s.f.. Haven't made it through one winter in Oregon and coating is peeling off in many places. Thought I would have a great looking deck for many years, not so! Not happy with all the work done and money spent."[25]

h.    "Less than 2 years after we paid to have our deck power-washed, boards repaired, and Deck & Dock applied, we need to have it done again. It looks terrible and is wearing off and exposing deck and areas where our toddler could easily get a splinter. Reached out to SW to get feedback but at this time, I would not recommend it."[26]

i.    "I used this product on our 5 year old deck 2 years ago. Within a year the coating was peeling and the hardware started rusting. Black mold was forming through the paint. Caused the treated wood to rot. It doesn't seal any cracks. Now I'm having to strip the paint from the deck. What a mess. I highly discourage anyone from using this product."[27]

j.    "We wanted to update our deck color and chose this product, BIG MISTAKE! Our deck was just 8 years old and had it professionally applied. We chose to replace some potentially bad boards to make sure we were good to go. At first product looked great, but about 12 months into the makeover, boards began to rot through and black mold coming from the paint. WOULD NOT RECOMMEND!"[28]

28.    Despite Defendants' claims to the contrary, the Products routinely crack, chip, peel, mold, discolor, bubble, and otherwise fail within a short amount of time after applying according to the label's instructions. The failures occur sooner than the multiple-year timeframe that Defendants claim the Products should last.

29.    Exterior protective coatings may be penetrating or film-forming.[29] Penetrating coatings soak into wood while film-forming coatings leave a film on top of the wood.[30]

---

[25] https://www.sherwin-williams.com/homeowners/products/superdeck-ir-reflective-exterior-waterborne-semisolid-color-stain#ratings-and-reviews
[26] https://www.sherwin-williams.com/homeowners/products/superdeck-exterior-deck-dock-coating#ratings-and-reviews
[27] *Id.*
[28] *Id.*
[29] U.S. Dep't of Agric., Forest Serv., Forest Prods. Lab., Gen. Tech. Report FPL-GTR-190, *Wood Handbook, Wood as an Eng'g Material* 16-16 (2010), https://www.fpl.fs.fed.us/documnts/fplgtr/fpl_gtr190.pdf.
[30] *Id.*

30.     Decking is subject to changing weather, changing temperatures, wet-dry and freeze-thaw cycles, sunlight, and foot traffic. Paints and solid-color stains are not suitable for decking because they are easily susceptible to cracking and peeling.[31] According to the USDA Forest Products Laboratory *Wood Handbook*, "[d]ecks are usually finished with penetrating clears, lightly pigmented clears, or semitransparent stains" which "seldom fail by cracking and peeling."[32] Tinted finishes and semitransparent stains may have a service life of one to six years on a wood deck.[33]

31.     The Products are not properly designed to achieve the outcomes that Defendants claim they can achieve because the Products, unlike properly designed protective exterior coatings, are film-forming rather than penetrative. As a film-forming coating, the Products are not suitable for application to decking because they are easily susceptible to cracking and peeling.

32.     Applying a film-forming coating to a damaged deck or when refinishing a deck requires "extensive surface preparation."[34] Before refinishing a wood deck with a film-forming coating, one should "sand areas of exposed wood with 50- to 80-grit sandpaper to remove the weathered surface and to feather the abrupt paint edge."[35]

33.     Despite Defendants' marketing of the Products toward consumers with damaged decks, Defendants' directions for applying the Products are inadequate for consumers with damaged decks or who are refinishing their decks because they do not instruct consumers to sand the surface first. Failing to sand the surface prevents the coating from adhering to the surface, ensuring that the coating will crack, peel, and discolor even sooner.

---

[31] *Id.* at 16-17, 16-22
[32] *Id.* at 16-22.
[33] *Id.*
[34] *Id.* at 16-24.
[35] *Id.*

34.     Defendants knew or should have known of the Products' defects and inability to meet Defendants' claims prior to placing the products in the stream of commerce because it is common knowledge in the industry that coatings that are easily susceptible to cracking and peeling in a short period of time are not suitable for decking and could not have lived up to Defendants' claims.

35.     Defendants were on notice of the defects because of numerous complaints from customers that the Products had chipped, peeled, flaked, worn down, discolored and otherwise failed prematurely.

36.     Despite Defendants' knowledge of the defects, Defendants continued and still continue to market, sell, and warrant the Products as a premium product that will live up to Defendants' claims. Defendants knowingly and intentionally concealed and failed to disclose that Defendants' claims on product labels, websites, promotional videos, warranties, advertisements, and public statements about Products' quality, longevity, and durability are false, deceptive, and misleading.

37.     Defendants failed to inform customers that the Products chip, peel, flake, wear down, discolor and otherwise fail to achieve their intended purpose after a short amount of time. These omissions are material because customers who purchase exterior protective coatings expect that the coatings will be durable and last for an extended period of time—at least the amount of time that manufacturers claim the product should last. Products therefore are not suitable for their ordinary or intended purpose.

38.     If customers, including Plaintiffs and class members, knew of Products' defects and that they could not provide the claimed benefits and protections, Plaintiffs and customers would not have purchased or used them, or they would have only paid substantially less for them.

39.     Defendants warranted all of the Products in substantially the same manner: "If this product, when applied according to label instructions to a properly prepared surface, fails to perform to your complete satisfaction for as long as you own your home, manufacturer shall, upon presentation of proof of purchase to manufacturer or its authorized representative, either replace an equivalent quantity of product free of charge or refund the original purchase price."[36] Defendants' warranties substantively differ only in the number of years that a product is warranted, ranging from a number of years to as long as the customer owns his home.

40.     When the Products chip, peel, flake, wear down, discolor or otherwise fail, customers are forced to remove the coating from their deck at their own considerable expense in order to return their deck to its original state. After removing the failed coating, customers may find that the coating failed to protect the deck from being damaged by cracking, mold, fungus, or mildew, which may require expensive repairs or replacement of the entire deck. Thus, Defendants' warranties fail their essential purpose, and Defendants' warranty limitations, remedial limitations, and implied warranty exclusions are unconscionable.

41.     Defendants had no intention of honoring their warranties and concealed this fact from customers in order to induce customers into purchasing the Products with a false belief that they would be protected from a product failure. Defendants routinely and unjustifiably denied fault in response to customer complaints in order to renounce their obligations under the warranty.

42.     On or around April 24, 2017, Plaintiff Eric Rusnock purchased two cans of SuperDeck IR Reflective Exterior Waterborne Semi-Solid Color Stain in the chestnut color for $63.52 from the Sherwin-Williams Paint Store in Ellwood City, Pennsylvania. He later purchased two additional cans on or around June 12, 2017 for $58.07 from the same store.

---

[36] Product Summary, Deck & Dock with Cool Feel™ Technology, SuperDeck, https://www.superdeck.com/wp-content/uploads/2016/12/5400-Series-50-VOC-PDG-9-27-16.pdf (last visited Mar. 29, 2019).

43.     A photograph of a can of the product Plaintiff Rusnock purchased is below:



44.     Plaintiff Rusnock purchased the product on behalf of himself and Plaintiffs Andrew and Rose Nye (Plaintiff Rusnock's father-in-law and mother-in-law). The Nye Plaintiffs reimbursed Plaintiff Rusnock for their share of the product.

45.     Before making his purchases, Plaintiff Rusnock researched the product on the Sherwin-Williams website, and he reviewed and reasonably relied upon the statements and claims made on the website and the product label, including claims as to the product's durability, high quality, superiority, longevity, and ability to offer long-lasting protection. He was not aware that the product was defective and could not provide the promised benefits before he purchased or used the product.

46.     Before Plaintiff Rusnock made his purchases, the Nye Plaintiffs relied on the recommendations of Plaintiff Rusnock who was acting as their agent in selecting the product to be applied to their deck. The Nye Plaintiffs also researched the product on the Sherwin-Williams website, and they reviewed and reasonably relied upon the statements and claims made on the website and the product label, including claims as to the product's durability, high quality, superiority, longevity, and ability to offer long-lasting protection. They were not aware that the product was defective and could not provide the promised benefits before they purchased or used the product.

47.     Around June 2017, Plaintiff Rusnock applied approximately 2 ¾ cans of the product to his wooden deck and followed all of Defendants' instructions and directions for preparation of the deck and application of the product to the deck.

48.     Also around June 2017, the Nye Plaintiffs applied approximately 1 ¼ cans of the product to their wooden deck and followed all of Defendants' instructions and directions for preparation of the deck and application of the product to the deck.

49.     Around March 2018, Plaintiff Rusnock noticed the product had chipped, peeled, flaked, worn down, and discolored, continuing to get significantly worse over time, exposing more of the bare wood deck to the elements. The product did not live up to its claims of durability, superiority, high quality, longevity, and long-lasting protection, and it prematurely deteriorated.

50.     Defendants' SuperDeck product applied by Plaintiff Rusnock to his deck prematurely failed, and he has suffered injury in fact and lost money and property as a result of Defendants' unfair, deceptive, untrue, and misleading statements described herein.

51.     Defendants' representations regarding the quality of the products and their claimed performance were false, misleading, and deceptive. Had Plaintiff Rusnock known of the products'

18

true defective nature and that they could not provide the promised benefits, he would not have purchased or used the product, or he would have only purchased the product for a significantly lower price.

52.     Photographs of the chipping, peeling, flaking, wearing, discoloration, and damage to Plaintiff Rusnock's deck are below:













53.     Soon after application of the product, within a few months, the Nye Plaintiffs noticed the product had chipped, peeled, flaked, worn down, and discolored, continuing to get significantly worse over time, exposing more of the bare wood deck to the elements. The product did not live up to its claims of durability, superiority, high quality, longevity, and long-lasting protection, and it prematurely deteriorated.

54.     Defendants' SuperDeck product applied by the Nye Plaintiffs to their deck prematurely failed, and they have suffered injury in fact and lost money and property as a result of Defendants' unfair, deceptive, untrue, and misleading statements described herein.

55.     Defendants' representations regarding the quality of the products and their claimed performance were false, misleading, and deceptive. Had the Nye Plaintiffs known of the products' true defective nature and that they could not provide the promised benefits, they would not have purchased or used the product, or they would have only purchased the product for a significantly lower price.

56.     Photographs of the chipping, peeling, flaking, wearing, discoloration, and damage to the Nye Plaintiffs' deck are below:

























57.     Plaintiffs' decks remain damaged as a result of the failure of the product.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the following proposed Classes:

a.      **Nationwide Class**: All persons and entities who own, have owned, or acquired homes, residences, buildings, or other structures in which a SuperDeck sealer, stain, or coating product has been applied.

b.      **Pennsylvania Class**: All persons and entities who own, have owned, or acquired homes, residences, buildings, or other structures physically located in Pennsylvania in which a SuperDeck sealer, stain, or coating product has been applied.

59.     The following persons should be excluded from all Classes: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest of Defendants; (2) Defendants' legal representatives, assigns, and successors; and (3) the judge to whom this case is assigned and any member of the judge's immediate family.

60.     Plaintiffs reserve the right to redefine the Classes prior to class certification.

30

61.     The number of Class members is unknown at this time, but Plaintiffs believe the Class consists of thousands or tens of thousands of consumers.

62.     Members of the Classes are so numerous that joinder of all members would be impracticable.

63.     Questions of law or fact common to all Class members predominate over individual questions of law or fact, including:

        a.     Whether Products are defective;

        b.     Whether Products failed to perform as Defendants warranted;

        c.     Whether Products failed to meet ordinary consumers' reasonable expectations;

        d.     Whether Defendants knew that Products were defective;

        e.     Whether Defendants' warranties, limitations, and exclusions are unconscionable or unenforceable;

        f.     Whether Defendants' did not intend to honor their warranties;

        g.     Whether Plaintiffs and the Classes are entitled to injunctive and declaratory relief;

        h.     Whether and to what extent Plaintiffs and the Classes suffered damages as a result of Defendants' conduct; and

        i.     Whether and to what extent Defendants were unjustly enriched.

64.     Plaintiffs' claims are typical of those brought on behalf of the Classes. Plaintiffs purchased Defendants' defective products which failed shortly after being applied to their decks. Plaintiffs, like all Class members, suffered damages as a result of their purchase and use of Defendants' defective products, including compensatory damages from the purchase and use of a defective product which failed prematurely and incidental damages from the property damage caused by the products' defects and lack of protection.

65.    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting nationwide and multi-state consumer class actions. Plaintiffs and counsel are committed to prosecuting this action vigorously on behalf of the Classes they represent, and counsel has the financial resources to do so. Neither Plaintiffs nor counsel have any interest adverse or antagonistic to those of the Classes.

66.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, the vast majority of class members would be unwilling or unable to maintain an individual action against Defendants to vindicate their claims and would therefore have no effective remedy. Prosecution of many separate actions would create a risk of inconsistent and varying adjudications which could establish incompatible standards of conduct for Defendants. Many separate actions concerning substantially the same questions would be an inefficient use of judicial resources. There are no unusual legal or factual issues that create any foreseeable manageability concerns for counsel or the Court.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

(Plaintiffs individually, and on behalf of the Classes)

67.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

68.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrantor" for failing to comply with any obligation under a written or implied warranty. 15 U.S.C. § 2310(d)(1).

69. Duckback and SuperDeck sealer, stain, and coating products are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

70. Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

71. Defendants are "warrantors" and "suppliers," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

72. Defendants have failed to remedy the defects associated with Duckback and SuperDeck products despite Defendants' knowledge of their propensity to prematurely chip, peel, flake, wear down, discolor or otherwise fail shortly after application.

73. Defendants' express warranties on their Products limit warranty relief to product replacement or refund of the purchase price. These warranty limitations violate the Act and fail to meet minimum federal warranty standards and are therefore not enforceable. §§ 2302(a), 2304(a)(3), 2308(a), and 2308(c). The warranty limitations also fail of their essential purpose and are unconscionable as a matter of law under U.C.C. § 2-302, as adopted by the class jurisdictions.

74. Defendants had knowledge that the Duckback and SuperDeck products had a propensity to prematurely fail, yet Defendants continued to misrepresent and deceive consumers with written and implied warranties concerning the durability, quality, superiority, and longevity of the products. Defendants' conduct constitutes "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Accordingly, Defendants' behavior is unlawful under 15 U.S.C. §§ 2310(b) and 45(a)(1).

75. Plaintiffs and Class members are entitled to damages resulting from Defendants' breach of their written and implied warranties and their deceptive and unlawful conduct. Damages

include labor and costs from removing products and replacing decking and other property damaged by the products or by the products' failure. 15 U.S.C. § 2310(d)(1).

76. Plaintiffs and Class members seek reformation of Defendants' written warranty to comport with Defendants' obligations under the Act and with consumers' reasonable expectations of the products. 15 U.S.C. § 2310(d)(1).

77. Plaintiffs and Class members seek to enjoin Defendants from engaging in unlawful conduct. 15 U.S.C. § 2310(d)(1).

78. Plaintiffs and Class members are entitled to seek attorneys' fees and costs. 15 U.S.C. § 2310(d)(2).

## COUNT II

## BREACH OF EXPRESS WARRANTY

(Plaintiffs individually, and on behalf of the Classes)

79. Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

80. Defendants' affirmations of fact and promises related to the Products, as described more fully herein, became part of the basis of the bargain between the parties.

81. These affirmations of fact and promises created an express warranty that the Products would conform with Defendants' affirmations and promises.

82. Defendants are obligated under the terms of these express warranties to replace the products sold to Plaintiffs and the Classes and to repair any property damage caused by the Products or by the failure of the Products.

83. Defendants knew that Products were easily susceptible to chipping, peeling, flaking, wearing down, discoloring or otherwise failing prematurely but misrepresented their

durability, quality, superiority, and longevity. Defendants had unequal bargaining power. Defendants' limited remedies fail consumers' reasonable expectations of satisfaction with the Products. Therefore, Defendants' limitations and exclusions in the warranties which purport to require only a refund or replacement fail of their essential purpose and are unconscionable.

84.     Defendants breached their express warranties by failing to supply Products in a condition that satisfies the warranty obligations and by failing to compensate Plaintiffs and Class members for damages caused by the Products.

85.     Plaintiffs complied with all warranty terms by applying the Products according to the label instructions and maintaining residence in their home. Defendants have refused Plaintiffs' and Class members' demands to comply with the warranty terms.

86.     As a direct and proximate result of Defendants' conduct and failure to conform to representations in breach of Defendants' express warranties, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

<u>**COUNT III**</u>

<u>**BREACH OF IMPLIED WARRANTY**</u>

(Plaintiffs individually, and on behalf of the Classes)

87.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

88.     Defendants engage in the business of designing, manufacturing, marketing, and selling exterior protective sealer, stain, and coating products. Defendants impliedly warranted by engaging in this business that Products were of merchantable quality and fit for their ordinary purpose.

35

89.     The Products were not of merchantable quality or fit for their ordinary purpose because the Products were defective and easily susceptible to chipping, peeling, flaking, wearing down, discoloring or otherwise failing prematurely. Products could not be used for their ordinary purpose because protective coatings for decks must provide protection for a reasonable amount of time.

90.     Defendants knew or should have known of the Products' defects but failed to disclaim the implied warranty, thereby inducing Plaintiffs and Class members to believe that the Products were fit for their ordinary purpose.

91.     Defendants breached the implied warranty by failing to supply Products in a condition that is fit for their ordinary purpose of protecting consumers' decks.

92.     As a direct and proximate result of Defendants' conduct and failure to conform to representations in breach of the implied warranty, Plaintiffs and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

## COUNT IV

## UNJUST ENRICHMENT

(Plaintiffs individually, and on behalf of the Classes)

93.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

94.     Plaintiffs and Class members have conferred substantial benefits on Defendants by purchasing Products for a price which is not commensurate with the Defendants' representations as to the durability, quality, superiority, and longevity of the Products. Defendants have knowingly and willingly accepted and enjoyed such benefits.

36

95.     Defendants accepted and enjoyed such benefits with knowledge that they supplied Products to Plaintiffs and Class members which were defective and easily susceptible to chipping, peeling, flaking, wearing down, discoloring or otherwise failing prematurely. Plaintiffs did not receive products of the durability, quality, superiority, and longevity which they expected and paid a premium price for.

96.     It would be inequitable for Defendants to retain such benefits without paying the value of the benefit to Plaintiffs and Class members.

97.      As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class members have suffered injury and seek an order for Defendants' disgorgement and return to Plaintiffs and Class members the amount unjustly paid to Defendants.

## COUNT V

## VIOLATION OF THE UNFAIR TRADE PRACTICES

## AND CONSUMER PROTECTION LAW

(Plaintiffs individually, and on behalf of the Pennsylvania Class)

98.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

99.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-3.

100.    The UTPCPL applies to the claims of Plaintiffs and Pennsylvania Class members because the unlawful marketing, advertising, warranting, and sale of Products occurred in Pennsylvania.

101.    Defendants' practices of marketing, warranting, and selling Products as premium, high-quality, long-lasting, reliable, and durable products, despite Defendants' knowledge of the Products' defects, and then refusing to fulfill their obligations under their warranties, as described more fully herein, constitute a violation of the UTPCPL under the following sections:

a.    § 201-2(4)(v): "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have";

b.    § 201-2(4)(vii): "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another";

c.    § 201-2(4)(ix): "Advertising goods or services with intent not to sell them as advertised";

d.    § 201-2(4)(xiv): "Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made"; and

e.    § 201-2(4)(xxi): "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

102.    Defendants knew or should have known of Products' defects and inability to meet Defendants' claims prior to placing the products in the stream of commerce because it is common knowledge in the industry that coatings that are easily susceptible to chipping, peeling, flaking, wearing down, discoloring or otherwise failing in a short period of time are not suitable for decking and could not have lived up to Defendants' claims.

103.    Defendants intended that consumers would rely on their misrepresentations, concealment, omissions, and other deceptive practices concerning Products, and Defendants' conduct was likely to cause Plaintiffs and Pennsylvania Class members to be deceived about the durability, quality, superiority, and longevity of the Products.

104.    Facts concealed or not disclosed by Defendants' concerning Products poor durability, quality, and longevity are material facts that reasonable consumers would consider when purchasing an exterior protective coating.

105.    Plaintiffs and Pennsylvania Class members reasonably relied on Defendants' misrepresentations when purchasing and using Products.

106.    Had Plaintiffs and Pennsylvania Class members knew of Products' defects, they would not have purchased or used them, or they would have only paid substantially less for them.

107.    Plaintiffs and Pennsylvania Class members are purchasers of Products "primarily for personal, family or household purposes" and suffered damages as a direct and proximate result of Defendants' unlawful conduct under the UTPCPL. 73 Pa. Stat. Ann. § 201-9.2.

108.    As a direct and proximate result of Defendants' violations of the UTPCPL, Plaintiffs and Pennsylvania Class members have suffered damages, injury in fact, and ascertainable loss and are, therefore, entitled to relief, including damages, plus triple damages, costs and attorney's fees under 73 Pa. Stat. Ann. § 201-9.2(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Defendants as follows:

a.    For economic and compensatory damages on behalf of Plaintiffs and the Classes;

b.    For restitution;

c.    For actual damages sustained and for trebled damages, as permitted by relevant consumer fraud statutes;

d.    For punitive damages, as otherwise applicable;

e.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

    f.      For such other and further relief as this Court deems just and appropriate.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: <u>4/22/2019</u>                     Respectfully submitted,

                                       <u>/s/ Andrew Baker</u>
                                       Andrew Baker
                                       THE BAKER LAW GROUP
                                       107 South High Street, Suite 400
                                       Columbus, OH 43215
                                       Telephone: (614) 228-1882
                                       andrew.baker@bakerlawgroup.net

                                       Charles E. Schaffer*
                                       Nicholas J. Elia*
                                       LEVIN SEDRAN & BERMAN, LLP
                                       510 Walnut Street, Suite 500
                                       Philadelphia, PA 19106
                                       Telephone: (215) 592-1500
                                       Facsimile: (215) 592-4663
                                       cschaffer@lfsblaw.com
                                       nelia@lfsblaw.com

                                       D. Aaron Rihn, Esquire*
                                       ROBERT PEIRCE & ASSOCIATES
                                       707 Grant Street, Suite 2500
                                       Pittsburgh, PA 15219
                                       Telephone: (412) 281-7229
                                       Facsimile: (412) 281-4229
                                       arihn@peircelaw.com

                                       *To Be Admitted *Pro Hac Vice*

                                       ***Attorneys for Plaintiff***